IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ELISE CUNANAN and <br> JOHN CUNANAN, Husband and Wife, <br><br> Plaintiffs, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. CIV-23-540-R <br> ) <br> ) <br> ) <br> ) <br> ) |

# ORDER

This breach of contract and bad faith action arises from State Farm's adjustment of an insurance claim for storm damage to Plaintiffs' roof. Plaintiffs contend that State Farm breached the insurance contract and acted in bad faith by conducting an unreasonable investigation, applying standards that are inconsistent with the policy terms, and failing to provide a certified copy of the policy in a timely manner. State Farm has filed a Motion for Partial Summary Judgment as to the bad faith claim [Doc. No. 90] which is now fully briefed. [Doc. Nos. 108, 109, 110].

## FACTUAL BACKGROUND

Plaintiffs claim their roof was damaged by a hail storm that occurred on October 14, 2021. Def.'s Br. at ¶¶ 3, 8.[1] At the time of the alleged loss, the property was insured under a State Farm policy that provided coverage for "accidental direct physical loss" caused by

---

[1] Unless otherwise noted, this section includes material facts that are either admitted or not properly disputed.

1

"windstorm or hail." *Id.* at ¶ 4. The policy does not define accidental direct physical loss or hail damage.

Plaintiffs submitted a claim to State Farm for the storm damage and included a report from a roofing company that recommended a full roof replacement. *Id.* at ¶ 7. Four days later, State Farm claims specialist Rick Eulberg inspected the property and found storm-related damage to Plaintiffs' pergola, playset, guttering, soft-metal roof appurtenances, and one window screen, but not to the roof. *Id.* at ¶ 12-13. Mr. Eulberg's claim notes from the time of the inspection state that he observed "granule loss, not ADPL" and found "zero hail hits that are being attributed to the [date of loss]." *Id.* at ¶¶ 12, 15; Def.'s Ex. 5 at 85-86. Following the inspection, Mr. Eulberg prepared an estimate which included replacing the window screen, guttering, and soft metals and staining the pergola. Def.'s Br. at ¶ 13.

Plaintiffs were unhappy with estimate and retained a public adjuster to assist them with their claim. The public adjuster sent State Farm photographs of the roof, weather reports, an estimate for a complete roof replacement. *Id.* at ¶ 19. After receiving the information, Mr. Eulberg noted that many of the photos "showed what appear to be hail damage (age)?" and that the weather data showed hail on the date of loss. Def.'s Ex. 5 at 84.

State Farm Team Manager Jason Taylor reviewed the information to determine if inspection should occur. During his review, he noted that Mr. Eulberg incorrectly omitted the cost to stain the playset from the estimate. However, he determined that there was not a basis for a second inspection. The claim notes state that "this appears to be a case where

2

the physical evidence provides are [sic] accurate picture than the weather data" and "[t]he spatter, lack of claims from this storm in a densely populated and insured area, and age of dmg to the roof (if hail at all)" indicate that the October 14, 2021 storm "is not the explanation for what is on this roof." *Id.*; Def.'s Br. at ¶ 21. Following Mr. Taylor's review, Mr. Eulberg updated the estimate to include the cost to stain the playset. He also sent Plaintiffs a letter explaining there was not "any damage identified to the shingles or roofing components from hail impacts other than some minor hail to the vent caps," the photos provided by Plaintiffs' public adjuster show "ordinary weathering, deterioration and granular loss" but no evidence of hail damage from the date of loss, and State Farm was therefore declining to conduct a second inspection. *Id.* at ¶ 24.; Def.'s Ex. 17.

In response, Plaintiffs' public adjuster sent State Farm an estimate showing that Plaintiffs' neighbors, who are also insured by State Farm, received a full roof replacement as a result of the October 14, 2021 storm and requested a copy of their claim. *Id.* at ¶ 25. State Farm declined to provide the claim file, explained that each claim is handled on its own merits, and indicated that the information did not change its decision to deny a reinspection. *Id.* at ¶ 26.

On March 16, 2022 and March 18, 2022, the public adjuster emailed State Farm and requested a certified copy of Plaintiffs' policy. *Id.* at ¶ 29. The claim notes from March 21, 2022, state that State Farm notified the public adjuster that a copy of the policy had been requested from the appropriate personnel. *Id.* at ¶ 31. State Farm emailed the public adjuster a copy of the policy on March 30, 2022, but it was not certified and the images were blurry to the point of being illegible. *Id.* at ¶ 31, Pl.'s Br. at ¶ 31. The next day, March 31, 2022,

3

the public adjuster filed an official Complaint with the Oklahoma Insurance Department regarding the failure to provide a certified, legible copy of the policy and sent an email to State Farm regarding the issue. Def.'s Br. at ¶ 32. The public adjuster then sent three emails to State Farm during the very early morning hours of April 4, 2022 requesting the claim file, the underwriting file, and a certified copy of the policy. *Id.* The April 6, 2022 claim notes state that Mr. Taylor emailed the public adjuster a legible, although still uncertified, copy of the policy. *Id*. at ¶ 33. On September 6, 2021, Plaintiffs' counsel requested a certified copy of the policy, which was sent on September 21, 2022. *Id.* at ¶¶ 34-35.

Plaintiffs do not dispute this general timeline of events, but contest the thoroughness of State Farm's inspection and its conclusion that the roof did not suffer a covered loss. In support, they note that two roofing companies found hail damage and their neighbor received a full roof replacement due to damage from the same storm. *See* Pl.'s Br. at ¶¶ 7-8. They further note that Mr. Eulberg improperly omitted damage to the playset on his initial estimate, found hail dents to soft metals at the property that he attributed to the date of loss, and observed granular loss to the shingles. Plaintiffs also asserts that State Farm intentionally applied a heightened damage standard when evaluating the roof that is inconsistent with the coverage provided by the policy. In this regard, they rely on Mr. Eulberg's testimony that "[t]here needs to be damage to the mat for it to be bruised, a fracture. There needs to be softness to the mat…" and that if he sees granular loss accompanied by hail but does not see damage to the mat, he would want to discuss it with management before he considered it accidental direct physical loss. Pl.'s Ex. 4 at 107:23-108:2; 121:2-9. They also point to testimony from State Farm's corporate representative

acknowledging that hail damage can cause granular loss, "to cover hail you've got to then go to a technical definition of what is hail damage," and "granular loss is not defined as hail damage" if it does not involve "loss to the water shedding capability or a bruise or a fracture to the mat." Pl.s' Ex. 5 at 106:7-22; 107:14-18. Further, State Farm's claim guidelines provide that hail damage on a composition roof surface "could include bruising, fractures, punctures or excessive granular loss."[2]

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.... An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Id*. at 670–71 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the

---

[2] Although this provision of State Farm's claim guidelines was filed under seal, the Court finds that this short excerpt does not contain proprietary information that would warrant sealing this order, particularly given that this provision has already been reproduced in another district court opinion. *See Brown v. State Farm Fire & Cas. Co.,* No. 20-CV-0418-CVE-JFJ, 2022 WL 875648, at *2 (N.D. Okla. Mar. 23, 2022).

burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id*. at 671 (citing Fed. R. Civ. P. 56(e)). Importantly, at this stage, the court's role is not "to weigh the evidence and determine the truth of the matter," but to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 249–52. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## DISCUSSION

Plaintiffs allege that State Farm acted in bad faith by failing to conduct a reasonable investigation, failing to timely provide a certified copy of the policy, and intentionally applying a heightened definition of damage that is inconsistent with the policy language. State Farm contends there is a legitimate dispute as to coverage and no additional evidence of bad faith conduct.

Under Oklahoma law, "an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought." *Christian v. Am. Home Assurance Co.*, 577 P .2d 899, 904 (Okla. 1977). To establish a bad faith claim, an insured "must present evidence from which a reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993).

The Tenth Circuit, relying on Oklahoma law, has explained that courts generally conduct a two-step analysis when evaluating a bad faith claim. *Shotts v. GEICO Gen. Ins. Co.*, 943 F.3d 1304, 1315 (10th Cir. 2019). "First, the court considers whether there is a legitimate dispute between the insurer and the insured regarding coverage or the value of the claim." *Id*. "[T]he fact that a reasonable jury could find in favor of the insurer based on all facts known or that should have been known by the insurer when it denied a claim is strong evidence that a dispute is 'legitimate.'" *Oulds*, 6 F.3d at 1442. If there is no legitimate dispute, "the court may infer that the insurer denied payment in bad faith." *Shotts*, 943 F.3d at 1315. If there is a legitimate dispute, the court "proceeds to the second step of the analysis and considers whether the plaintiff offered specific additional evidence to demonstrate bad faith." *Id*. Additional evidence of bad faith may include "evidence that the insurer did not actually rely on th[e] legitimate [dispute] to deny coverage, denied the claim for an illegitimate reason, or otherwise failed to treat the insured fairly." *Id*. (internal quotation marks and citations omitted) (brackets in original).

Here, there is a legitimate dispute between the parties regarding coverage under the policy. State Farm's adjuster inspected the roof and determined that the shingles did not have any hail impacts attributable to the date of loss. State Farm's team manager reviewed the documentation generated as a result of the inspection and reviewed additional information sent by Plaintiffs' public adjuster and similarly concluded that the roof was not damaged as a result of the October 14, 2021 storm. Although Plaintiffs disagree with this assessment, the undisputed facts establish that there is a legitimate disagreement as to the existence or cause of the damage on the roof.

As additional evidence of bad faith, Plaintiffs argue that State Farm acted unreasonably during the investigation of the claim by ignoring weather data showing large hail near the property on the date of loss, refusing to consider evidence that Plaintiffs' neighbor's roof was replaced for damage from the same storm, incorrectly concluding that the property was hit by pea sized hail based on the size of the spatter marks, and denying a reinspection even though Mr. Taylor conceded at his deposition that he could not tell just by looking at photographs whether they showed hail impacts.

When evaluating a claim, an insurer "must conduct an investigation reasonably appropriate under the circumstances." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991). Importantly, "when a bad faith claim is premised on inadequate investigation, the insured must make a showing that material facts were overlooked or that a more thorough investigation would have produced relevant information." *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 345 (10th Cir. 1995). Plaintiffs have not made this showing. The undisputed facts show that State Farm was aware of weather data showing large hail in the area on the date of loss, paid for hail damage to other parts of Plaintiffs' property, and was alerted to the fact that Plaintiffs' neighbor's roof was replaced. Further, State Farm's team manager reviewed and relied on all the information gathered during the claim investigation before concluding that a second inspection was not warranted. Although Plaintiffs and State Farm disagree as to the conclusions that should be drawn from the weather data, surrounding claims, and physical evidence at the property, they have not identified evidence from which a reasonable juror could infer that State Farm intentionally overlooked material facts or that a more thorough investigation "would have

delegitimized the insurer's dispute of the claim." *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1128 (10th Cir. 2012); *Lopez v. Farmers Ins. Co.*, No. CIV-10-0584-HE, 2011 WL 1807158, at *3 (W.D. Okla. May 6, 2011) (rejecting argument that insurer acted in bad faith by failing to consider claims to neighboring properties where insurer was aware that surrounding properties had roof replacements).

Additionally, to the extent Plaintiffs identify errors that occurred during the investigation, such as failing to initially include the cost to stain the playset or inaccurately assessing the spatter marks, the cited errors do not show conduct that is more than merely negligent. *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1094 (Okla. 2005) (explaining that "the minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award"); *Roberts v. State Farm Mut. Auto. Ins. Co.*, 61 F. App'x 587, 592 (10th Cir. 2003) ("Under Oklahoma law, however, an insurer's investigation need only be reasonable, not perfect."); *Phillips v. State Farm Fire & Cas. Co.*, 640 F. Supp. 3d 1103, 1110 (N.D. Okla. 2022) (explaining that the fact that an insurer drew "mistaken conclusions about the damage to plaintiffs' roof is sufficient to substantiate that there is a legitimate dispute as to the extent and valuation of damage" but does not "raise any evidence of intentional bad faith conduct").

Plaintiffs also complain that State Farm acted in bad faith by waiting six months, and until Plaintiffs retained counsel, to provide a certified copy of their insurance policy. The undisputed facts show that Plaintiffs' public adjuster received a legible, although uncertified, copy of the policy within three weeks of making the request. After receiving

this copy, no further requests were made until Plaintiffs' counsel again requested a certified copy of the policy, which was provided within three weeks. Even construed in Plaintiffs' favor, these facts do not permit an inference of bad faith. Plaintiffs have not shown that State Farm was refusing to communicate with them or unreasonably delaying providing a response to their request, nor do they explain how the failure to promptly receive a certified copy of the policy negatively affected the handling of the claim or their ability to assess their coverage under the policy.

Plaintiffs' final argument in support of their bad faith claim is that State Farm intentionally applied a heightened damage standard that is inconsistent with the policy and trains its employees to ignore all but the most severe hail damage.[3] In support, Plaintiffs point to testimony that State Farm will only cover hail damaged shingles if they are bruised or fractured and does not consider hail-caused granular loss to be covered damage Plaintiffs contend this position is inconsistent with the policy, which broadly provides coverage for any accidental direct physical loss and does not distinguish between functional and cosmetic damage.[4] This raises a dispute as to what the policy covers but does not, in this

---

[3] In support of their argument that State Farm's training program suggests bad faith conduct, Plaintiffs include citations to evidence that is not referenced in their additional statement of material facts. In any event, Plaintiffs have not identified any specific evidence showing that State Farm trained its employees to ignore all but the most severe hail damage. Instead, the crux of their argument is that State Farm does not consider hail-caused granular loss a covered loss.

[4] In making this argument, Plaintiffs rely on *Brown v. State Farm Fire & Cas. Co.*, No. 20-CV-0418-CVE-JFJ, 2022 WL 875648 (N.D. Okla. Mar. 23, 2022), which denied summary judgment to the insurer on a bad faith claim based, in part, on evidence showing that the insurer "had a practice of ignoring hail damage to roof shingles unless the hail penetrated through the fiberglass mat" even though the policy does "not distinguish hail damage

case, raise an inference of bad faith conduct. Even if ultimately mistaken, State Farm had a reasonable basis on which to conclude that the damage to Plaintiffs' roof, including the granular loss, was not caused by hail from the date of loss. *See McKenzie v. Hanover Ins. Co.*, No. 21-258-JWB, 2024 WL 1053542, at *5 (E.D. Okla. Mar. 7, 2024) (noting that the insured's argument that the insurer "misapplied the policy by applying the exclusions when there was evidence that the hail proximately caused the damage" presented "a clear dispute as to coverage" but does not show bad faith); *Wilson v. State Farm Fire & Cas. Co.*, No. 21-CV-0062-CVE-SH, 2022 WL 1555816, at *5 (N.D. Okla. May 17, 2022) (noting that evidence that "the damage standard applied by State Farm's engineering expert (i.e., whether accidental direct physical loss is a lesser standard than impaired water-shedding ability or reduced expected life span of the wood shake roof)" presents a coverage dispute and does not show bad faith).

In the absence of "conflicting evidence from which different inferences may be drawn regarding the reasonableness of insurer's conduct," *Badillo*, 121 P.3d at 1093 (quotation omitted), summary judgment on a bad faith is appropriate. Here, taking the facts in the light most favorable to Plaintiffs, there is not sufficient "evidence from which a

---

coverage based on whether hail penetrates through the shingle mat." *Id*. at *4-5. In other words, there was evidence the insurer "relied on an arbitrary distinction between hail bruising and hail fracture--even though both compromise the integrity and longevity of a roof--as a means of denying all but the most severe roof damage claims the court." *Id*. Notably, in *Brown*, there was also evidence that the insurer had a practice of "intimidating field adjusters to find no hail damage to roof shingles." *Id*. This case is different. Not only is there no evidence that adjusters were intimidated into wrongfully denying claims, but there is also no evidence that State Farm arbitrarily distinguished between bruising and fracturing of the shingle mat.

11

reasonable jury could conclude that the insurer did not have a reasonable good faith belief for withholding payment of the insured's claim." *Oulds*, 6 F.3d at 1431. Accordingly, State Farm is entitled to summary judgment on Plaintiff's bad faith claim. The Court additionally concludes that Plaintiffs will be unable to recover punitive damages as their only remaining claim is for breach of contract. *See Wilspec Techs., Inc. v. DunAn Holding Grp., Co.*, 204 P.3d 69, 74 (Okla. 2009).

## CONCLUSION

As set out above, Defendant's Motion for Partial Summary Judgment [Doc. No. 90] is GRANTED. Judgment will be entered on this claim in Defendant's favor when the case is concluded with respect to all claims and parties. Fed.R.Civ .P. 54(b).

IT IS SO ORDERED this 23rd day of September, 2024.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE